The Honorable Kymberly K. Evanson
The Honorable Lauren King
The Honorable Richard A. Jones

# UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF WASHINGTON
### AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>               Plaintiff,<br><br>v.<br><br>HECTOR DURAN ALDACO, et al.,<br><br>               Defendants. | NO.    CR24-079 KKE<br><br><br>UNITED STATES' MEMORANDUM IN SUPPORT OF DETENTION |
| UNITED STATES OF AMERICA,<br><br>               Plaintiff,<br><br>v.<br><br>BRIAN AXEL PEDRAZA CISNEROS, et al.,<br><br>               Defendants. | NO.    CR24-081 RAJ<br><br><br>UNITED STATES' MEMORANDUM IN SUPPORT OF DETENTION |
| UNITED STATES OF AMERICA,<br><br>               Plaintiff,<br><br>v.<br><br>SALINA ROSE ATSEMET,<br><br>               Defendant. | NO.    CR24-082 LK<br><br><br>UNITED STATES' MEMORANDUM IN SUPPORT OF DETENTION |

U.S. Memo in Support of Detention - 1
*U.S. v. Duran Aldaco, et al.*, CR24-079 KKE;
*U.S. v. Pedraza Cisneros, et al.*, CR24-081 RAJ;
*U.S. v. Atsemet*, CR24-082 LK
*U.S. v. Lopez,* MJ24-287

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5200
SEATTLE, WASHINGTON 98101
(206) 553-7970

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                              Plaintiff,<br><br>v.<br><br>BRIAN LOPEZ,<br><br>                              Defendant. | NO.    MJ24-287 LK<br><br>UNITED STATES' MEMORANDUM<br>IN SUPPORT OF DETENTION |

## I.    INTRODUCTION

The United States respectfully submits this memorandum in support of its detention motions in these four related matters.  While there are three indictments, and one complaint, all four matters involve a single investigation that included four rounds of wiretaps of phones and social media accounts. This memorandum will provide a brief overview of the investigation that led to these charges, summarize the applicable law (which is of course well known to the Court), and then address some specific issues presently known to the government that apply to individual defendants relevant to that defendant's continued detention.

## II.    BACKGROUND OF THE INVESTIGATION

In December 2022, the DEA and FBI identified Hector Duran Aldaco (aka "Jay Thrax") as a large-scale fentanyl distributor operating in Western Washington. In addition to distributing fentanyl, investigators have linked Duran Aldaco to the distribution of methamphetamine, cocaine, and alprazolam (Xanax). During the investigation, through physical and electronic surveillance, travel records, and a variety of other investigative techniques, agents were able to determine that the Jay Thrax Drug Trafficking Organization (DTO) was being supplied by a Mexico-based DTO. Agents determined that the Jay Thrax DTO picked up narcotics in the Los Angeles area and transported them to the Seattle area for redistribution. They would often utilize rental cars to transport the drugs but recently transitioned to using buses after several traffic stops resulted in seizures of large amounts of

U.S. Memo in Support of Detention - 2
*U.S. v. Duran Aldaco, et al.*, CR24-079 KKE;
*U.S. v. Pedraza Cisneros, et al.*, CR24-081 RAJ;
*U.S. v. Atsemet*, CR24-082 LK
*U.S. v. Lopez,* MJ24-287

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5200
SEATTLE, WASHINGTON 98101
(206) 553-7970

narcotics. During this investigation, there have been a number of seizures from individuals associated with the Jay Thrax DTO in California, Oregon, and Washington.

During this investigation, large amounts of controlled substances were seized. On April 25, 2023, the California Highway Patrol (CHP) conducted a traffic stop on four individuals who investigators believed were transporting illegal narcotics to Washington State for Duran Aldaco. Officers seized 47 kilograms of methamphetamine and 115,000 fentanyl pills.[1] On June 28, 2023, the Oregon State Patrol (OSP) seized 28 pounds of methamphetamine from a vehicle that Rogelio Pena was a passenger in. This vehicle was driving north towards Washington state at the time. On November 15, 2023, OSP made another traffic stop that resulted in the seizure of 15 kilograms of methamphetamine and 30 kilograms of fentanyl laced pills in a vehicle that was driven by Sebastian Rojas. A day prior, Rojas had sent a video of the pills over Snapchat to Duran Aldaco. On February 15, 2024, agents recovered three pounds of marijuana from a vehicle associated with Alexander Kemp. On February 28, 2024, agents seized one kilogram of cocaine and two assault style rifles from a vehicle driven by Salina Atsemet. On March 24, 2024, agents seized 16 kilograms of cocaine from Brian Pedraza Cisneros and Jose Aguilar Cortes after they were stopped in Centralia, WA. On March 28, 2024, agents seized 14 pounds of methamphetamine and a quarter kilogram of cocaine during an undercover buy and bust operation with Duran Aldaco and Daniel Moreno. Lastly, on April 11, 2024, the Portland Police Department seized 7.5 kilograms of fentanyl laced pills from a bag that had been abandoned at a bus station by a known associate of Duran Aldaco.

This investigation involved the use of the following court-authorized Title III wire intercepts:

---

[1] This seizure was charged in Merced County, California.

U.S. Memo in Support of Detention - 3
*U.S. v. Duran Aldaco, et al.*, CR24-079 KKE;
*U.S. v. Pedraza Cisneros, et al.*, CR24-081 RAJ;
*U.S. v. Atsemet*, CR24-082 LK
*U.S. v. Lopez,* MJ24-287

- On November 5, 2023, the Honorable John H. Chun, United States District Judge, authorized the interception of wire and electronic communications over Target Account 1 (TA1), a Snapchat account used by Hector Duran Aldaco.
- On November 25, 2023, the Honorable John H. Chun, United States District Judge, authorized the interception of wire communications over Target Telephone 40 (TT40), a phone used by Hector Duran Aldaco.
- On February 2, 2024, the Honorable John H. Chun, United States District Judge, authorized the interception of wire and electronic communications over Target Account 1 (TA1), Target Account 35 (TA35), and Target Telephone 63 (TT63). Interception of wire only communications was also authorized for Target Telephone 50 (TT50). TA35 was a Snapchat account utilized by Rogelio Pena. TT63 was a phone utilized by Duran Aldaco. TT50 was used by David Padilla.
- On February 24, 2024, the Honorable John H. Chun, United States District Judge, authorized the interception of wire and electronic communications over Target Telephone 15 (TT15), a phone used by Damian Pina-Raymundo

The wiretaps and other investigative techniques revealed the two conspiracies charged in two of the indictments as well as the conduct alleged in all three indictments and two complaints[2]. After interceptions began, investigators quickly discovered Duran Aldaco was a large distributor of controlled substances for several individuals that investigators believe are redistributors.

On November 7, 2023, Target Account 1 had a conversation with Snapchat account "C_licona202184" (hereinafter "Target Account 26" or "TA26"), which investigators believe was being used by Nedlin Licona Rivera. During the conversation Licona Rivera requested

---

[2] Two defendants, Otis Lee Dew and Brian Lopez, were charged in separate complaints following the execution of search warrants at their residences.

U.S. Memo in Support of Detention - 4
*U.S. v. Duran Aldaco, et al.*, CR24-079 KKE;
*U.S. v. Pedraza Cisneros, et al.*, CR24-081 RAJ;
*U.S. v. Atsemet*, CR24-082 LK
*U.S. v. Lopez*, MJ24-287

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5200
SEATTLE, WASHINGTON 98101
(206) 553-7970

"waters" (methamphetamine). Duran Aldaco responded that he was "dry" (out of stock), but would have more in a few days. Duran Aldaco also told Licona Rivera that he only had "white" (fentanyl or cocaine) and the "other pills." Licona Rivera asked Duran Aldaco how much "the whole ones" were because he needed those. Duran Aldaco sent a price of $16,200.

"Waters" is a common code word used by drug traffickers to refer to methamphetamine. "White" is a common code word that is used by drug traffickers to refer to a white powder that is typically either cocaine or fentanyl powder. Agents believe that Licona Rivera reached out to Duran Aldaco over Target Account 1 asking if Duran Aldaco had methamphetamine for sale. Duran Aldaco responded by telling Licona Rivera that he currently did not have methamphetamine ("I am dry"), but that he had a white powder, which agents believe was either cocaine or fentanyl powder, and pills. Agents believe that Duran Aldaco was telling Licona Rivera what he had in supply that they began to negotiate over the price of a kilogram of the white powder ("the whole ones"). According to investigators, $16,200 is a current wholesale market price for a kilogram of cocaine, which is why investigators believe that they were discussing cocaine in this conversation.

On November 27, 2023, at 6:46 pm PST (Session #66), investigators intercepted a phone call between Damian Pina-Raymundo using Target Telephone 15 and Hector Duran Aldaco using Target Telephone 40. During this call, Pina-Raymundo asked Duran Aldaco if he had any "waters" (methamphetamine). Duran Aldaco, once again, responded that he was out, but would have some in a few days. Pina-Raymundo then asked if Duran Aldaco had any "rueditas" (fentanyl-laced pills). When Duran Aldaco responded that he had the rueditas, Pina-Raymundo asked how much Duran Aldaco would charge him for 10,000 pills. Duran Aldaco told Pina-Raymundo that he was trying to sell them for $.60 per pill, and Pina-Raymundo asked if Duran Aldaco would sell them to him for $.58 per pill, and in exchange Pina-Raymundo would buy mor elater at $.60 per pill.

U.S. Memo in Support of Detention - 5
*U.S. v. Duran Aldaco, et al.*, CR24-079 KKE;
*U.S. v. Pedraza Cisneros, et al.*, CR24-081 RAJ;
*U.S. v. Atsemet*, CR24-082 LK
*U.S. v. Lopez*, MJ24-287

Investigators believe that Damian Pina-Raymundo was asking Duran Aldaco if Duran Aldaco was still out of methamphetamine. To which Duran Aldaco responded that he was still out, but that he would have more in a few days. "Rueditas" in Spanish translates to "little tires." Investigators believe the word "rueditas" is referring to little pills, and that Pina-Raymundo was asking Duran Aldaco if he had any pills. Furthermore, agents believe that $0.60 was a fair market value per pill for fentanyl at that time, thus Pina-Raymundo and Duran Aldaco were discussing fentanyl-laced pills during this interception. When Pina-Raymundo asked for "ten of them" he was requesting to purchase 10,000 pills from Duran Aldaco.

During this investigation, investigators listened to a number of conversations between Duran Aldaco and other members in his DTO that followed the same pattern above. More specifically, members would reach out to Duran Aldaco for a specific product (fentanyl, cocaine, methamphetamine, and Alprazolam) and seek to purchase distribution-level amounts with the intent of redistributing those substances. In most cases, they would negotiate the pricing and come to an agreement. During the wiretaps, Duran Aldaco was intercepted interacting and communicating with every other defendant listed in the *Duran Aldaco et. al.* indictment talking about the sale and distribution of illicit narcotics.

On May 8, 2024, the grand jury returned three indictments charging a total of 13 defendants with seven counts, including Conspiracy to Distribute Controlled Substances, in violation of 21 U.S.C. §§ 841(a)(1) and 846, Possession with Intent to Distribute, in violation of 21 U.S.C. §§ 841(a)(1), and Using a Firearm During and in Relation to a Drug Trafficking Crime, in violation of 18 U.S.C. § 924(c). Ten defendants were charged under CR24-079 KKE, two defendants were charged under CR24-081 RAJ, and one defendant was charged under CR24-082 LK.

U.S. Memo in Support of Detention - 6
*U.S. v. Duran Aldaco, et. al.*, CR24-079 KKE;
*U.S. v. Pedraza Cisneros, et al.*, CR24-081 RAJ;
*U.S. v. Atsemet*, CR24-082 LK
*U.S. v. Lopez,* MJ24-287

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5200
SEATTLE, WASHINGTON 98101
(206) 553-7970

On May 10, 2024, Magistrate Judge Brian A. Tsuchida, United States District Court, Western District of Washington, authorized search warrants – based on one application – for 26 locations associated with all three indictments under MJ24-278.

On May 14, 2024, investigators executed the warrants and found the following (all in approximate amounts):

- 12,984.2 grams of Methamphetamine
- 1,047 grams of Cocaine
- 14,300 Fentanyl Pills
- 27,691 grams of Marijuana
- 37.8 grams of Oxy
- 41 grams of Mushrooms
- 42 total firearms

The cumulative total of seizures during the course of this investigation are the following:

- 93,984.2 grams of Methamphetamine
- 22,047 grams of Cocaine
- 534,300 Fentanyl Pills
- 327 grams of Fentanyl Powder
- 27,691 grams of Marijuana
- 37.8 grams of Oxy
- 41 grams of Mushrooms
- 53 total firearms
- Money seized: $128,081.

//

//

U.S. Memo in Support of Detention - 7
*U.S. v. Duran Aldaco, et al.*, CR24-079 KKE;
*U.S. v. Pedraza Cisneros, et al.*, CR24-081 RAJ;
*U.S. v. Atsemet*, CR24-082 LK
*U.S. v. Lopez*, MJ24-287

# III.  LEGAL STANDARDS FOR DETENTION

This Court is of course quite familiar with the legal standards governing detention or release.  To summarize, the Bail Reform Act provides that a court should detain a defendant pending trial if "no condition or combination of conditions . . . will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(f).  The United States typically bears the burden of showing that a defendant poses a danger to the community by clear and convincing evidence, and it bears the burden of showing that a defendant poses a flight risk by a preponderance of the evidence.  *United States v. Gebro*, 948 F.2d 1118, 1120 (9th Cir. 1991).

The Bail Reform Act identifies four factors that a court should consider in analyzing detention issues: "(1) The nature and circumstances of the offense charged, including whether the offense . . . involves a narcotic drug; (2) the weight of the evidence . . . ; (3) the history and characteristics of the person, including . . . family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, . . . ; and . . . (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release . . . ." 18 U.S.C. § 3142(g). Of these factors, the weight of evidence is least important, and the statute neither requires nor permits pretrial determination of guilt. 18 U.S.C. § 3142(g).

As noted above, the government generally has the burden of proof and persuasion regarding detention. However, nine of the defendants in these matters are charged with one or more serious Title 21 offenses.  As to those charges, the Bail Reform Act expressly provides that:

> [s]ubject to rebuttal by the person, it shall be presumed that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community if the judicial officer finds that there is probable cause to believe that the person committed an offense for which a maximum term of imprisonment of ten years or more is prescribed in

U.S. Memo in Support of Detention - 8
*U.S. v. Duran Aldaco, et al.*, CR24-079 KKE;
*U.S. v. Pedraza Cisneros, et al.*, CR24-081 RAJ;
*U.S. v. Atsemet*, CR24-082 LK
*U.S. v. Lopez*, MJ24-287

the Controlled Substances Act (21 U.S.C. 801 *et seq*.) . . . or an offense under section 924(c) . . . of title 18 of the United States Code . . .

18 U.S.C. § 3142(e). The return of an indictment is sufficient to support a finding of probable cause, triggering the rebuttable presumption. *United States v. Hazime*, 762 F.2d 34, 37 (6th Cir. 1985); *United States v. Suppa*, 799 F.2d 115, 119 (3d Cir. 1986); *United States v. Stricklin*, 932 F.2d 1353, 1354 (10th Cir. 1991).

In a case where the presumption applies, Courts have found that the *defendant* bears the burden of producing evidence that he does not pose a danger to the community or risk of flight in order to rebut the presumption. *See United States v. Abad*, 350 F.3d 793, 797 (8th Cir. 2003); *United States v. Mercedes*, 254 F.3d 433, 436 (2d Cir.2001); *Stricklin*, 932 F.2d at 1354. The government retains the burden of persuasion. *Mercedes*, 254 F.3d at 436.

However, even if a defendant has met his burden of production relating to these two factors, the presumption favoring detention does not disappear. Rather, it remains a factor to be considered among those weighed by the district court. *See Stricklin*, 932 F.2d at 1354-55; *Mercedes*, 254 F.3d at 436; *United States v. Rueben*, 974 F.2d 580, 586 (5th Cir. 1992). If the presumption were to vanish once a defendant produced *some* evidence, courts would not give adequate deference to the fact that Congress has determined "that drug offenders pose a special risk of flight and dangerousness to society." *United States v. Martir*, 782 F.2d 1141, 1144 (2d Cir.1986); *United States v. Hare*, 873 F.2d 796, 798 99 (5th Cir.1989).

Finally, it is well settled that at a detention hearing the government may present evidence by way of an evidentiary proffer sufficient to make the court aware of the defendant's role in the offense, the weight of the evidence against the defendant, and other relevant factors. *See, e.g. United States v. Salerno*, 481 U.S. 739, 743 (1987); *United States v. Winsor*, 785 F.2d 757 (9th Cir. 1986); *United States v. Cardenas*, 784 F.2d 937 (9th Cir.), *vacated as moot upon defendant's conviction*, 792 F.2d 906 (9th Cir. 1986). The statements of fact herein, which are based on the wiretap and search warrant affidavits sworn to the Court, and a summary of the results of said searches, is presented as such a proffer.

U.S. Memo in Support of Detention - 9
*U.S. v. Duran Aldaco, et al.*, CR24-079 KKE;
*U.S. v. Pedraza Cisneros, et al.*, CR24-081 RAJ;
*U.S. v. Atsemet*, CR24-082 LK
*U.S. v. Lopez,* MJ24-287

**INDIVIDUAL DEFENDANT ROLES AND ANALYSIS**

The following defendants present particular risks of flight and/or a danger to the community due to their role in the offense, criminal history, possession of firearms, or some combination of the above.

**Duran Aldaco et. al. (CR24-079 KKE)**

1.    **Hector Duran Aldaco:** Duran Aldaco is charged with conspiring to distribute A-level amounts of methamphetamine, cocaine, and fentanyl. This investigation into Duran Aldaco began in early 2023. In February 2023, agents learned that an individual known as "Thrax" was running a Drug Trafficking Organization in the Western District of Washington. Investigators obtained information that "Thrax" was using the Snapchat account "J.thraxio" that had a display name of "JThrax." Agents obtained a search warrant for the Snapchat account and were able to identify Duran Aldaco as the user of the account. This eventually led to a Title III wiretap of Duran Aldaco's Snapchat account, and two phones he used. Agents intercepted a number of communications between Duran Aldaco and various individuals regarding his drug trafficking activities and his possession of firearms. A portion of those communications are described below.

During the wiretap period, agents also intercepted communications between Duran Aldaco and a number of Mexico-based phone numbers, including his source of supply discussing the supply of narcotics. At one point, investigators intercepted a conversation with Duran Aldaco was discussing the price of narcotics and how much they should buy and sell them for in order to make a good profit. This conversation also included discussion about a third party brining a large quantity of narcotics into the Western District of Washington and how Duran Aldaco was willing to help that individual move the narcotics in this area.

Intercepted communications also allowed investigators to connect Duran Aldaco to seizures made in this case, showing the depth and reach this DTO had. Regarding the April

U.S. Memo in Support of Detention - 10
*U.S. v. Duran Aldaco, et al.*, CR24-079 KKE;
*U.S. v. Pedraza Cisneros, et al.*, CR24-081 RAJ;
*U.S. v. Atsemet*, CR24-082 LK
*U.S. v. Lopez*, MJ24-287

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5200
SEATTLE, WASHINGTON 98101
(206) 553-7970

25, 2023, CHP seizure mentioned above, agents also intercepted communications between Duran Aldaco and the Snapchat account "Loveme1256." Duran Aldaco asked for "D's" number, and the user of "Loveme1256" replies with a phone number that was given by Diana Laura Juarez-Saldana to CHP during the April 25, 2023, stop discussed above. On February 19, 2024, agents also intercepted another communication between the two where Loveme1256 (believed to be Saldana) told Duran Aldaco that she just received a letter saying they were not going to seal her record so she has nine felonies on there and how it has already been difficult for her to get a job. She no longer needed Duran Aldaco to pay the lawyer like he said he would, and then asked for 16,000 because that was enough for her school, and she could double the money she owes everyone. She continued by saying that she does not think that it was too much to ask given what she has been through. Saldana also sent a picture of a letter form the Superior Court of California, County of Merced with the denial of a request for Saldana to seal an arrest. Duran Aldaco confirmed $16,000 and that he "got her" within two weeks or less. Because of Duran Aldaco's conduct a number of individuals are facing serious felony charges and lengthy prison sentences.

//

//

//

U.S. Memo in Support of Detention - 11
*U.S. v. Duran Aldaco, et al.*, CR24-079 KKE;
*U.S. v. Pedraza Cisneros, et al.*, CR24-081 RAJ;
*U.S. v. Atsemet*, CR24-082 LK
*U.S. v. Lopez*, MJ24-287

The wiretap interceptions also provided insight into the number of firearms that Duran Aldaco had access to. During the interception period, it became abundantly clear that not only did Duran Aldaco possess several firearms, but he was also in the business of buying and selling these firearms to other members of his DTO. An example of this includes the interceptions on February 28, 2024, between Duran Aldaco and co-defendant Bryan Gonzalez Gutierrez[3]. During these interceptions Gutierrez sent Duran Aldaco a message asking if Duran Aldaco had any "new tools" [referring to firearms]. Duran Aldaco responded by sending a photograph of a firearm and told Gutierrez "ask your boy if he's down to do 4 zips for this. I don't want cash I want work" and sends a photograph of a second firearm (photos of both firearms below).

 

Duran Aldaco and Gutierrez continue to negotiate for the price of the firearms. By the context of the conversation, agents determined that both Duran Aldaco and Gutierrez were

---

[3] Gonzalez Gutierrez has not yet been arrested and is believed to be in Mexico based on GPS pings obtained by investigators.

U.S. Memo in Support of Detention - 12
*U.S. v. Duran Aldaco, et al.*, CR24-079 KKE;
*U.S. v. Pedraza Cisneros, et al.*, CR24-081 RAJ;
*U.S. v. Atsemet*, CR24-082 LK
*U.S. v. Lopez,* MJ24-287

negotiating for other individuals. Duran Aldaco told Gutierrez "he's solid on 6oz for the two" Gutierrez responded with "he said he'll do 4 1/2" and "He'll keep buying he said." Duran Aldaco responded with "he said 5.5 final offer." Gutierrez confirmed the price, and they arranged the transaction – guns for drugs. Duran Aldaco was also communicating with a third party who was going to sell the firearms to Duran Aldaco for him to sell to Gutierrez's purchaser.

This was not the only instance of Duran Aldaco buying and selling firearms. Agents intercepted additional communications where Duran Aldaco purchased firearms and then immediately turned around to sell them. At one point, agents observed what they believed to be the sale of firearms from a third party to Duran Aldaco. Shortly after this sale was observed agents intercepted the below photo sent to several individuals in the DTO, with the caption "Up for grabs 750 except the one with the scope."



U.S. Memo in Support of Detention - 13
*U.S. v. Duran Aldaco, et al.*, CR24-079 KKE;
*U.S. v. Pedraza Cisneros, et al.*, CR24-081 RAJ;
*U.S. v. Atsemet*, CR24-082 LK
*U.S. v. Lopez,* MJ24-287

Not only was Duran Aldaco peddling large quantities of dangerous, addictive, drugs to the community, he was arming himself and the members of his DTO with deadly weapons. There is no question that Duran Aldaco poses a danger to the community.

On March 28, DEA had arranged for an undercover agent (UC) to purchase 15 pounds of methamphetamine from a Mexico-based phone number (this was unrelated to this investigation into the Jay Thrax DTO at the time). Just prior to the UC buy, the UC received a call from Duran Aldaco over a phone number agents had associated with Duran Aldaco. The UC immediately the voice of Duran Aldaco. Duran Aldaco arranged to meet with the UC to sell him the drugs. Duran Aldaco met the UC with 14 pounds of meth. Inside the car that Duran Aldaco arrived in was Daniel Moreno (discussed below) and a quarter kilogram of cocaine. Duran Aldaco also provided agents with false information, which agents believe was an attempt to thwart law enforcement officers. See photo of March 28th seizure below.



March 28, 2024, Seizure

Based on the intercepts throughout the course of this investigation, it is clear that Duran Aldaco is the leader of this DTO and is a major source of supply for many of the individuals listed in these indictments. Additionally, despite the numerous seizures, including the March 28, 2024, seizure, Duran Aldaco remained relentless in his efforts to continue in distributing controlled substances on a grand scale. He was not deterred one bit. The combination of drugs and guns presents a major danger to community.

U.S. Memo in Support of Detention - 14
*U.S. v. Duran Aldaco, et al.*, CR24-079 KKE;
*U.S. v. Pedraza Cisneros, et al.*, CR24-081 RAJ;
*U.S. v. Atsemet,* CR24-082 LK
*U.S. v. Lopez,* MJ24-287

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5200
SEATTLE, WASHINGTON 98101
(206) 553-7970

Furthermore, Duran Aldaco is a flight risk. During the investigation agents determined that both Duran Aldaco's father and brother own properties in Mexico. Duran Aldaco was also intercepted communicating with a number of individuals based in Mexico. Investigators observed that during the investigation Duran Aldaco visited Mexico at least once. Duran Aldaco is a flight risk given these strong ties to Mexico. Additionally, as discussed above, when confronted by law enforcement, Duran Aldaco provided a false address and refused to give a phone number (even though agents observed two phones in the vehicle). Duran Aldaco also did not provide his full name to investigators, instead he simply told them that his name was "Hector Duran."

According to Pre-Trial Services, Duran Aldaco is also currently on probation for his 2023 Negligent Driving in the First Degree Conviction. It is extremely concerning that while on probation Duran Aldaco continued to engage in this illegal conduct. This demonstrates that there is no condition, or combination of conditions that would reasonably assure future court appearances and address the safety of the community.

These factors support the conclusion that he presents a risk of nonappearance and a danger to the community. Duran Aldaco should be detained pending trial.

2.    **Damian Pina-Raymundo**: Pina-Raymundo is charged with conspiring to distribute A-level amounts of fentanyl and cocaine. Pina-Raymundo has been identified as a redistributor for this DTO, but also appears to have other sources of supply.

During the interception period on Snapchat, Pina-Raymundo was intercepted communicating with Duran Aldaco on a number of occasions. These communications included Pina-Raymundo asking Duran Aldaco for large quantities of cocaine, methamphetamine, and fentanyl pills.

Pina-Raymundo was also intercepted communicating with Duran Aldaco discussing firearms. During one phone conversation, Duran Aldaco asked Pina-Raymundo what Pina-

U.S. Memo in Support of Detention - 15
*U.S. v. Duran Aldaco, et al.*, CR24-079 KKE;
*U.S. v. Pedraza Cisneros, et al.*, CR24-081 RAJ;
*U.S. v. Atsemet,* CR24-082 LK
*U.S. v. Lopez,* MJ24-287

Raymundo had. Pina-Raymundo asked if Duran Aldaco meant "toys" [firearms] and Duran Aldaco confirmed. Pina-Raymundo said that he had "little handguns, pistols." Duran Aldaco asked if Pina-Raymundo could send "it" to him over WhatsApp, which agents believe meant that Duran Aldaco was requesting a photo of the firearms over WhatsApp. Pina-Raymundo confirmed and told Duran Aldaco that he would give Duran Aldaco one of the two. Towards the end of the call Pina-Raymundo told Duran Aldaco that he had two right now but could get more later.

During the execution of the search warrant at Pina-Raymundo's residence, agents also located several firearms.

Pina-Raymundo is facing a mandatory minimum of 10 years in prison for his role in the conspiracy. He was engaged in dealing large amounts of fentanyl and cocaine, two highly lethal and addictive drugs that continue to ravage communities across the State. Not only that, Pina-Raymundo based on the intercepts is also engaged in the sale and/or purchase of firearms. The combination of illicit narcotics and firearms presents a danger to the community. Furthermore, while Pina-Raymundo appears to have limited criminal history, he has an *active* bench warrant out of Orting Municipal Court.

These factors support the conclusion that he presents a risk of nonappearance and a danger to the community. Pina-Raymundo should be detained pending trial.

3.    **Daniel Moreno:** Moreno has been identified as a redistributor for this DTO. Moreno is charged with conspiring to distribute A-level amounts of methamphetamine. He is also in Count 4 with possession with intent to distribute A-level amounts of methamphetamine.

Agents intercepted several communications Snapchat communications between Duran Aldaco and Moreno. On November 8, Moreno sent Duran Aldaco a Snap message stating "I'm still waiting on the jug [customer] for this." On November 9, Duran Aldaco sent a Snap

U.S. Memo in Support of Detention - 16
*U.S. v. Duran Aldaco, et al.*, CR24-079 KKE;
*U.S. v. Pedraza Cisneros, et al.*, CR24-081 RAJ;
*U.S. v. Atsemet*, CR24-082 LK
*U.S. v. Lopez*, MJ24-287

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5200
SEATTLE, WASHINGTON 98101
(206) 553-7970

message to Moreno stating, "How much for the 8ball [1/8 of an oz] I got a jug" followed by "for u." Moreno responded with "250" and "Lmk."

Additional communications included Moreno asking Duran Aldaco for "that other half" and telling Duran Aldaco that he was going to move the one he had already and wanted it so he was "laggin."

As discussed above, Moreno was also with Duran Aldaco during the UC Buy on March 28. During the search of the vehicle, agents found cocaine and several small baggies that each weighted approximately the amount of an "8ball" that Moreno was known to sell. Moreno trafficked highly lethal and addictive drugs in large quantities and continued to do this for his own financial gain.

Additionally, Moreno is currently pending in King County District Court for a Driving Under the Influence arrest that occurred in April 2023. While Moreno was pending this charge and released under court directed conditions, he continued to engage in this illegal behavior and peddle drugs.

These factors support the conclusion that he presents a risk of nonappearance and a danger to the community. Daniel Moreno should be detained pending trial.

4. **Rogelio Pena:** Pena was identified as a courier for this DTO and was consistently seen travelling with Duran Aldaco. Pena was also the user of the Snapchat account TooSmoove2x23, which agents were authorized to intercept.

On June 28, 2023, Oregon State Patrol conducted a traffic stop of a grey Toyota Camry near Linn, Oregon for failing to signal. Pena was one of two passengers in the vehicle. During that stop, the officer searched the trunk of the vehicle and recovered 28 pounds of methamphetamine. Pena was released following the search of this vehicle.

Agents also intercepted several photos that Duran Aldaco sent to Pena over their Snapchat accounts where Pena was holding large quantities of cash. Videos of guns and Pena

U.S. Memo in Support of Detention - 17
*U.S. v. Duran Aldaco, et al.*, CR24-079 KKE;
*U.S. v. Pedraza Cisneros, et al.*, CR24-081 RAJ;
*U.S. v. Atsemet*, CR24-082 LK
*U.S. v. Lopez*, MJ24-287

holding marijuana, and rainbow-colored fentanyl pills were also recovered. (See below). Pena was also one of the users that Duran Aldaco sent the above-described photo with four firearms stating they were "up for grabs" demonstrating Pena's access to firearms.

  



During the execution of the search warrant at Pena's residence on May 14, 2024, agents found multiple plastic baggies of suspected cocaine of fentanyl powder and body armor (see photos below).

 

U.S. Memo in Support of Detention - 18
*U.S. v. Duran Aldaco, et al.*, CR24-079 KKE;
*U.S. v. Pedraza Cisneros, et al.*, CR24-081 RAJ;
*U.S. v. Atsemet*, CR24-082 LK
*U.S. v. Lopez,* MJ24-287

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5200
SEATTLE, WASHINGTON 98101
(206) 553-7970

Pena remained undeterred in his efforts to continue to distribute illicit narcotics at such a high volume despite being caught once before in June 2023. He was also not afraid to arm himself and make it known. His actions and role in this DTO present a danger to the community.

Additionally, Pena has a current pending King County District Court case where he is charged with Malicious Mischief in the Third Degree and Assault in the Fourth Degree. While that case was pending, Pena was released under court mandated conditions, and continued to engage in narcotics trafficking.

These factors support the conclusion that he presents a risk of nonappearance and a danger to the community. Rogelio Pena should be detained pending trial.

5. **David Padilla:** Padilla is charged with Conspiracy to Distribute A-Level amounts of controlled substances and faces a mandatory minimum of 10 years in prison. Agents believe that Padilla is a high-level redistributor within the DTO, but also a source of supply for other members of the DTO. Padilla's number was eventually wiretapped.

During the interception period, agents intercepted calls between Padilla and Duran Aldaco discussing narcotics. On one occasion, Padilla expressed his frustration regarding being unable to get enough "work" (narcotics), at which point Duran Aldaco offered to help source narcotics for Padilla.

Padilla also has strong ties to Mexico and appears to be able to run his drug trafficking business even while out of the country. At one point agents intercepted a communication between Padilla and an individual only identified as "Sergio." During that conversation Padilla told Sergio that he was currently in Sinaloa [Mexico] but needed "small candies" eventually clarifying that he needed the small "blue colored ones" (fentanyl pills). Padilla requested that Sergio supply him with 60,000 fentanyl pills and indicated that he needed the pills immediately even though he was in Mexico. Agents observed that Padilla's

U.S. Memo in Support of Detention - 19
*U.S. v. Duran Aldaco, et al.*, CR24-079 KKE;
*U.S. v. Pedraza Cisneros, et al.*, CR24-081 RAJ;
*U.S. v. Atsemet*, CR24-082 LK
*U.S. v. Lopez*, MJ24-287

GPS data indicated he was in Mexico for a portion of the wiretap, demonstrating his strong ties to Mexico.

During the execution of the search warrant and take down on May 14, 2024, Padilla along with Sebastian Rojas were observed in Salem, Oregon, based on GPS data from their cell phone pings. Prior to the execution of the search warrants, their phones appeared to be stationary, however shortly after agents executed these warrants, they observed Padilla and Rojas' phones begin to travel south. As their phones did not begin to move until *after* agents executed search warrants at the other DTO locations, agents believe that they were notified of the warrants and began to travel south. Additionally, once Padilla and Rojas heard about the take down of several members of the DTO, they tossed their phones out of the car in what is believed to be an attempt to thwart law enforcement officers. Those phones have sense been recovered and are pending forensic analysis.

Padilla and Rojas were eventually stopped and detained in Oregon. Padilla has made his initial appearance in the District of Oregon and is currently detained pending his transfer to this District.

Padilla is clearly a risk of flight and a danger to the community. As noted above, during the wiretap of Padilla's phone, he was intercepted on a phone call discussing the purchase of large amounts of fentanyl pills. His ties to Mexico are stronger than they are to the District of Washington, and he was caught *fleeing south* from agents in an effort to escape law enforcement.

These factors support the conclusion that he presents a risk of nonappearance and a danger to the community. David Padilla should remain detained pending trial.

U.S. Memo in Support of Detention - 20
*U.S. v. Duran Aldaco, et al.*, CR24-079 KKE;
*U.S. v. Pedraza Cisneros, et al.*, CR24-081 RAJ;
*U.S. v. Atsemet*, CR24-082 LK
*U.S. v. Lopez*, MJ24-287

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5200
SEATTLE, WASHINGTON 98101
(206) 553-7970

6. **Neldin Licona Rivera:** Licona Rivera is charged with conspiring to distribute A-Level amounts of fentanyl and B-Level amounts of cocaine. Licona Rivera is the user of the Snapchat account "c_licona202184." When agents obtained a search warrant for Duran Aldaco's account they observed several audio and text messages sent to and from Licona Rivera's account. Included in these was a video message of multicolored pills stamped with "M 30." (See photo below).



Additionally, during the intercept period Licona Rivera was intercepted requesting large quantities of narcotics. On one occasion Licona Rivera requested "60 little ones" which investigators believe was referring to 60,000 fentanyl pills. Licona Rivera was also intercepted asking Duran Aldaco for a kilogram of cocaine, and asking for a sample of the product so he could give it to his buyer because he had promised that the cocaine would be of a good quality.

Licona Rivera remains undeterred by his prior experiences with law enforcement as evidence by his criminal history which includes convictions for Robbery in the First Degree, Assault in the Fourth Degree and Weapons Capable of Producing Harm. According to Pre-Trial Services Licona Rivera does not appear to have legal status in this Country. Records

U.S. Memo in Support of Detention - 21
*U.S. v. Duran Aldaco, et al.*, CR24-079 KKE;
*U.S. v. Pedraza Cisneros, et al.*, CR24-081 RAJ;
*U.S. v. Atsemet*, CR24-082 LK
*U.S. v. Lopez,* MJ24-287

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5200
SEATTLE, WASHINGTON 98101
(206) 553-7970

show that he was removed in 2014, and there is no record of reentry. Additionally, Licona Rivera is associated with various versions of his court name and two separate dates of birth. This violent history coupled with his role in this case and immigration status, causes concern. These factors support the conclusion that he presents a risk of nonappearance and a danger to the community. Nedlin Licona Rivera should be detained pending trial.

7. **<u>Sebastian Rojas</u>:** Rojas is charged with conspiring to distribute A-level amounts of methamphetamine and fentanyl. He is believed to be a redistributor and runner for this DTO.

On November 5, 2023, agents intercepted a video from Rojas to Duran Aldaco on Snapchat showing Rojas holding a firearm with an extended magazine. On November 14, 2023, Rojas sent Duran Aldaco a video of hundreds of thousands of fentanyl pills (see photo below).

 

U.S. Memo in Support of Detention - 22
*U.S. v. Duran Aldaco, et al.*, CR24-079 KKE;
*U.S. v. Pedraza Cisneros, et al.*, CR24-081 RAJ;
*U.S. v. Atsemet*, CR24-082 LK
*U.S. v. Lopez,* MJ24-287

The following day, November 15, 2023, Oregon State Patrol stopped a rental vehicle being driven by Rojas. Eventually the trooper searched the vehicle and recovered approximately 15 kilograms of methamphetamine, and 30 kilograms of fentanyl laced pills (similar in quantity and color to the pills sent by Rojas to Duran Aldaco the day before).

 

As discussed above, during the execution of the search warrant and take down on May 14, 2024, Rojas along with David Padilla were observed in Salem, Oregon, based on GPS data from their cell phone pings. Prior to the execution of the search warrants, their phones appeared to be stationary, however shortly after agents executed search warrants in the Western District of Washington, they observed their phones begin to travel south. As their phones did not begin to move until *after* agents executed search warrants at the other DTO locations, agents believe that they were notified of the warrants and began to travel south. Additionally, once Padilla and Rojas heard about the take down of several members of

U.S. Memo in Support of Detention - 23
*U.S. v. Duran Aldaco, et al.*, CR24-079 KKE;
*U.S. v. Pedraza Cisneros, et al.*, CR24-081 RAJ;
*U.S. v. Atsemet*, CR24-082 LK
*U.S. v. Lopez,* MJ24-287

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5200
SEATTLE, WASHINGTON 98101
(206) 553-7970

the DTO, they tossed their phones out of the car. Those phones have sense been recovered and are pending forensic analysis.

Padilla and Rojas were eventually stopped and detained in Oregon. Rojas has made his initial appearance in the District of Oregon and is detained pending his transfer to this District.

Rojas consistently peddled drugs and was not deterred even after being stopped in Oregon. He also was observed to possess firearms throughout this investigation. These factors support the conclusion that he presents a risk of nonappearance and a danger to the community. Sebastian Rojas should be detained pending trial.

## Pedraza Cisneros et. Al. Indictment (CR24-081 RAJ)

1.  **Brian Axel Pedraza Cisneros:** Pedraza Cisneros is charged with conspiring to distribute A-level amounts of cocaine. He is also charged in count 2 with possession of a controlled substances with intent to distribute A-level amounts of cocaine.

Pedraza Cisneros was intercepted communicating with Duran Aldaco. During these communications Pedraza Cisneros asked Duran Aldaco for twenty "frescas" (twenty pounds of methamphetamine).

On March 24, agents observed Pedraza Cisneros heading north on I-5 from California. Agents also identified a second vehicle that was travelling in tandem with Pedraza Cisneros' vehicle. Agents observed that the two vehicles were traveling closely together, following every lane change and matching the speed of each other throughout Oregon. At one point agents observed both vehicles exit I-5 and travel to a Chevron gas station. Agents observed the drivers of both vehicles appear to speak with each other.

Once the vehicles reached Centralia, agents arranged for both vehicles to be stopped. The vehicle driven by co-defendant Jose Rodolfo Aguilar Cortes was searched after Cortes provided consent. Agents recovered 14 kilograms of a cocaine in the trunk of the vehicle [see photo below].

U.S. Memo in Support of Detention - 24
*U.S. v. Duran Aldaco, et al.*, CR24-079 KKE;
*U.S. v. Pedraza Cisneros, et al.*, CR24-081 RAJ;
*U.S. v. Atsemet*, CR24-082 LK
*U.S. v. Lopez,* MJ24-287

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5200
SEATTLE, WASHINGTON 98101
(206) 553-7970



   In the vehicle driven by Pedraza Cisneros, officers obtained consent to search the vehicle and found a firearm under the driver's seat. Officers believed that Pedraza Cisneros was driving under the influence, and he was booked at the scene.

   Agents seized Pedraza Cisneros' phone during the stop as well. Agents conducted a preliminary examination of WhatsApp messages and observed that there were multiple conversations regarding drugs. In a conversation on March 7, 2024, with an individual with a Mexico based phone number named "Padrino" [Godfather] Pedraza Cisneros sent a video of 15 kilograms of cocaine along with an AK style firearm. Pedraza Cisneros told Padrino that it was really great quality and he had already started selling it saying "I already sold one right now…I just deliver half…I will deliver half right now…and in a little bit I will deliver another one, there goes two, and in a little bit I will deliver two." On March 11, Pedraza Cisneros sent Padrino another message saying that he was working in Yakima, and he was "making an effort it almost is all gone, Padrino all of it. Can you believe it? And I arrived on

U.S. Memo in Support of Detention - 25
*U.S. v. Duran Aldaco, et al.*, CR24-079 KKE;
*U.S. v. Pedraza Cisneros, et al.*, CR24-081 RAJ;
*U.S. v. Atsemet,* CR24-082 LK
*U.S. v. Lopez,* MJ24-287

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5200
SEATTLE, WASHINGTON 98101
(206) 553-7970

Thursday. I don't even have a week here. Before the week ends I'll go back down again." On March 12, Pedraza Cisneros followed up confirming that he distributed all fifteen kilograms "15 kilos in less than a week, fuck it isn't easy." Pedraza Cisneros then follows up with "we need to start moving 80-100, at a minimum each month, about 20 a week son of a bitch."

During the execution of the search warrant at Pedraza Cisnero's residence on May 14, 2024, agents recovered approximately $9,000 in cash.

According to counsel for Pedraza Cisneros, his wife is currently in Mexico. Given the information obtained for Pedraza Cisneros' phone and the fact that his wife is currently living in Mexico this is no question that Pedraza Cisneros has strong ties to Mexico, and therefore presents a risk of flight.

Pedraza Cisneros dealt in large amounts of illegal narcotics while armed. This is concerning and a clear and present danger to the community. These factors support the conclusion that he presents a risk of nonappearance and a danger to the community. Brian Axel Pedraza Cisneros should be detained pending trial.

2.    **Jose Rodolfo Aguilar Cortes:** Cortes is charged with conspiring to distribute A-level amounts of cocaine. He is also charged in count 2 with possession of a controlled substances with intent to distribute A-level amounts of cocaine.

As mentioned above, on March 14, 2024, Cortes was driving a car that had 14 kilograms of cocaine in the trunk, which was recovered by agents.  On May 14, 2024, pursuant to a search warrant of Cortes' residence, agents recovered nearly 13 kilograms of methamphetamine. Despite being previously caught with large amounts of controlled substances, Cortes continued to possess these dangerous drugs in very large amounts. Cortes remained relentless in this endeavor despite the potential consequences he could face.

U.S. Memo in Support of Detention - 26
*U.S. v. Duran Aldaco, et al.*, CR24-079 KKE;
*U.S. v. Pedraza Cisneros, et al.*, CR24-081 RAJ;
*U.S. v. Atsemet*, CR24-082 LK
*U.S. v. Lopez*, MJ24-287

Additionally, during the search of his residence, Cortes told agents that he was from Mexico, and had previously been part of the Mexico military, demonstrating his clear, strong, ties to Mexico.

At the filing of this memo, the government also has no indication as to where Cortes was born, or his legal status in this country and therefore the government has no indication of Cortes ties to this community. These factors support the conclusion that Cortes presents a risk of nonappearance and a danger to the community. Jose Rodolfo Aguilar Cortes should be detained pending trial.

**Atsemet Indictment (CR24-082 LK)**

1.     **Salina Rose Atsemet:** Atsemet was the driver of the above-described BMW that contains two firearms as well as the kilogram of cocaine that was seized by DEA after Duran Aldaco interacted with Gutierrez. Atsemet was not intercepted over any of the wiretapped lines. She is charged with one count of possession of a controlled substance with intent to deliver B-level quantities of cocaine.

As mentioned above, Atsemet was the sole occupant of a car that was stopped and subsequently searched pursuant to a search warrant. Inside the trunk of the vehicle, agents recovered approximately one kilogram of cocaine (field tested positive) as well as a

U.S. Memo in Support of Detention - 27
*U.S. v. Duran Aldaco, et al.*, CR24-079 KKE;
*U.S. v. Pedraza Cisneros, et al.*, CR24-081 RAJ;
*U.S. v. Atsemet*, CR24-082 LK
*U.S. v. Lopez*, MJ24-287

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5200
SEATTLE, WASHINGTON 98101
(206) 553-7970

backpack with Atsemet's mail inside of it. In the backseat of the vehicle, agents recovered two assault style rifle firearms. A photo of the seizure is below.



Because Atsemet was found in possession of not only a large amount of cocaine, but also high-powered firearms and faces a lengthy prison sentence that has a five-year mandatory minimum, Atsemet presents a clear risk of nonappearance and a danger to the community. She should remain detained.

### Brian Lopez Complaint (MJ24-287)

1. **Brian Lopez**: Brian Lopez was arrested and charged on May 14, 2024, after the execution of a search warrant at his residence. Lopez was previously identified by agents as a member of this DTO and is believed to be a redistributor for the DTO.

In February 2023, agents executed a search warrant at Lopez's residence where he was residing with other individuals. A short time before agents executed the warrant, investigators observed Lopez at the residence. Investigators observed Lopez interacting with a vehicle outside the residence, and then observed Lopez enter the residence once again. While Lopez was inside the residence, the investigator observed an individual looking out the window at the investigator's vehicle. The investigator moved the vehicle and exited the vehicle to continue surveillance on foot. After the investigator exited the vehicle, they observed Lopez and a second individual exit Lopez's residence and walk in the direction of

U.S. Memo in Support of Detention - 28
*U.S. v. Duran Aldaco, et al.*, CR24-079 KKE;
*U.S. v. Pedraza Cisneros, et al.*, CR24-081 RAJ;
*U.S. v. Atsemet*, CR24-082 LK
*U.S. v. Lopez,* MJ24-287

the investigator's vehicle. While the investigator remained hidden, they observed Lopez and the unknown individual approach the vehicle in such a way as to remain hidden from any occupant of the investigator's vehicle. The investigator then observed LOPEZ look into the vehicle and observe no one inside, at which point LOPEZ struck the rear passenger side tire twice with an object, the investigator then heard air escaping from the tire. Following this, the investigator observed both individual flee the residence in a dark sedan. The warrant was executed at the residence, and agents found a safe, believed to belong to a third individual, that contained approximately 1,194 grams of cocaine.

During the wiretap period, agents intercepted communications between Duran Aldaco and Lopez indicating that Lopez was a redistributor for the DTO. On one occasion, Duran Aldaco is intercepted with a customer[4] who asks for Duran Aldaco to supply him with "one" (one quantity of narcotics). The customer indicated that he was going to be a skating rink. Following this interception, agents intercepted a communication between Duran Aldaco and Lopez, where Duran Aldaco asks Lopez to "hit the skating ring here in fed first." Investigators believe that Duran Aldaco was asking Lopez to deliver to the customer at the skating rink before heading to Duran Aldaco. Duran Aldaco is also intercepted communicating with the customer that his "homie" is going to be in a silver Honda Accord.

On May 14, 2024, agents executed a search warrant at Lopez's residence. While this warrant was scheduled to be executed at the same time as approximately 22 other locations, agents were approximately five minutes late to Lopez's residence. Agents believe that Lopez was given a warning that the warrants were being executed because he was observed by investigators exiting the residence immediately prior to the search, entering a vehicle and fleeing the location. At his residence, in his bedroom, agents recovered distribution amounts of drugs to include approximately 200 fentanyl pills, two ounces of methamphetamine, and

---

[4] During the investigation, investigators also observed what they believed to be a hand-to-hand transaction with this specific customer.

U.S. Memo in Support of Detention - 29
*U.S. v. Duran Aldaco, et al.*, CR24-079 KKE;
*U.S. v. Pedraza Cisneros, et al.*, CR24-081 RAJ;
*U.S. v. Atsemet*, CR24-082 LK
*U.S. v. Lopez,* MJ24-287

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5200
SEATTLE, WASHINGTON 98101
(206) 553-7970

one ounce of cocaine. Additionally, agents recovered a firearm in the shared area of the residence.

Agents observed, via GPS data, that Lopez drove to multiple locations that investigators were searching. Driving from one location to the next once he observed that investigators were already at the location. Eventually Lopez went to an associate's residence that was not being searched, where he switched cars and became the passenger. Lopez and the third individual then drove to a warehouse associated with the DTO. Investigators attempted to stop the vehicle by placing a police vehicle in front of the car Lopez was a passenger in and observed that the driver continued driving in an attempt to escape officers.

Once Lopez was stopped and detained, he said, in substance, to investigators: "If I had been driving, I would have gotten away. I've gotten away from the cops before." Agents also recovered a phone belonging to Lopez that he had smashed in what appeared to be an attempt to obstruct law enforcement.

On at least two occasions Lopez has actively fled law enforcement officers when they were attempting to search his residence. In this most recent incident, he flaunted his desire to flee by telling officers that he has done it before. There is absolutely no question that Lopez poses a flight risk. This coupled, with his clear danger to society by his peddling of dangerous and deadly drugs to the community shows that here is no condition or combination of conditions that would reasonably assure future Court appearances and address the safety of the community. Brian Lopez should be detained pending trial in this matter.

//

//

//

U.S. Memo in Support of Detention - 30
*U.S. v. Duran Aldaco, et al.*, CR24-079 KKE;
*U.S. v. Pedraza Cisneros, et al.*, CR24-081 RAJ;
*U.S. v. Atsemet*, CR24-082 LK
*U.S. v. Lopez,* MJ24-287

# VI.    CONCLUSION.

For the reasons set forth above, the government respectfully submits that these defendants present a risk of nonappearance and a danger to the community and that no condition or combination of conditions and reasonably assure their appearance or the safety to the community and should therefore be detained pending trial.

Dated this 15th day of May, 2024.

Respectfully submitted,

TESSA M. GORMAN
United States Attorney


*/s/ Elyne Vaught*
CASEY S. CONZATTI
ELYNE M. VAUGHT
Assistant United States Attorneys
700 Stewart Street, Suite 5220
Seattle, Washington 98101
Phone: 206-553-4254
Fax: 206-553-4659
E-mail: Elyne.vaught@usdoj.gov

U.S. Memo in Support of Detention - 31
*U.S. v. Duran Aldaco, et al.*, CR24-079 KKE;
*U.S. v. Pedraza Cisneros, et al.*, CR24-081 RAJ;
*U.S. v. Atsemet*, CR24-082 LK
*U.S. v. Lopez,* MJ24-287

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5200
SEATTLE, WASHINGTON 98101
(206) 553-7970